

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*50 Main Street, Suite 1100*
*White Plains, New York 10606*

August 27, 2025

**VIA ECF AND EMAIL**

The Honorable Victoria Reznik
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, N.Y. 10601

   Re: *United States v. Carlos Martinez, a/k/a "Bway,"* No. S2 25 Cr. 91 (VB)

Dear Judge Reznik:

  The Government respectfully submits this letter in support of its motion to detain defendant Carlos Martinez, a/k/a "Bway," pending trial. Until his arrest, Martinez was a leader of both a large-scale narcotics importation and distribution conspiracy and a violent street gang responsible for drug dealing, robberies, firearms trafficking, fraud, and murder. Martinez was previously convicted in this District of narcotics conspiracy, and one of his co-defendants now (Justice Beard) was also one of his co-defendants in that case. When Martinez was arrested in this case, he sought to smuggle ceramic razor blades and marijuana into jail, concealing them in wrapped packages hidden in his rectum. This is a presumption case, and there are no conditions or combination of conditions of release that would reasonably assure the safety of the community or Martinez's appearance as required.

  I. **Charges and Procedural Background**

  Superseding Indictment S2 25 Cr. 91 (VB) (the "S2 Indictment")[1], charges Martinez and others with (i) conspiracy to distribute controlled substances, in violation of 21 U.S.C § 846 (Count One); (ii) conspiracy to import narcotics and controlled substances, in violation of 21 U.S.C. § 963 (Count Two); (iii) continuing criminal enterprise, in violation of 21 U.S.C. § 848(a) and (c) (Count Three); (iv) racketeering conspiracy, in violation of 18 U.S.C. § 1962(d) (Count Four); and (v) possession of ammunition after a felony conviction, in violation of 18 U.S.C. § 922(g)(1) (Count Fourteen). Dkt. 74. These charges stem from Martinez's leadership of the Forbes List set of the Makk Ballas—a violent criminal organization that operates in Middletown, New York—and his leadership in a large-scale drug trafficking organization that was responsible

---

[1] The S2 Indictment was unsealed on August 25, 2025. Although the defendant has not yet been arraigned on the S2 Indictment, it contains the same charges against the defendant as the S1 Indictment, for which the defendant was arraigned on April 8, 2025. Prior to the S1 Indictment, the defendant was charged in the S4 Indictment, which was unsealed prior to the S1 Indictment.

for moving kilogram-quantities of narcotics over the border from Mexico to cities across the United States, including Middletown, New York. For these charges in the S2 Indictment, Martinez faces a mandatory minimum sentence of 20 years and a maximum sentence of life.

In late March 2025, agents from the Federal Bureau of Investigation ("FBI") attempted to locate and arrest Martinez but were unsuccessful. The agents left word with members of Matinez's family, and counsel for Martinez subsequently reached out to the Government. On April 8, 2025, Martinez self-surrendered to the FBI at the Courthouse in White Plains, although he arrived several hours later than the agreed-upon time. He had his initial appearance and arraignment before Your Honor on the S1 Indictment, which was unsealed at the arraignment, and he consented to detention without prejudice to a future application. He has since been detained at Westchester County Jail.

## II.     The Makk Ballas

Martinez was a leader of the Forbes List set of the Makk Ballas. The Makk Ballas are a highly organized street gang with a national presence. The Makk Ballas are made up of 11 "Hoods," or subsets, including the Forbes List, which is led by Martinez. The Forbes List, like the Makk Ballas, is also highly organized and has its own internal hierarchy that mimics the hierarchy of the Makk Ballas. The Forbes List leader—Martinez—is also referred to as the "Don," and the next most senior leaders are part of a committee called the "Commission." Lower leaders of the Forbes List occupy the "Elite Circle," "Fortune 500," and "Forbes 30-Under," among other subgroups. Members of the Forbes List take an oath, learn a common history of the gang, and are required to follow a set of gang-wide rules or laws. These laws include, among other things: "No Mac will partake in or allow another Mac to be hurt or disrespected without sanctions"; "Don't speak Mac business with outsider[s] or on the phone, text or social media"; "No snitching or dealing with rats it violates everything we believe immaculate"; and "Respect chain of command and all the Macs must contribute to the Family."

The Forbes List law requiring "contribut[ions] to the Family" is one of the most important Forbes List rules. That law requires that all Forbes List members regularly contribute to the "kitty," which is a common pot of money used for gang purposes that is shared with incarcerated Forbes List members. These contributions are mandatory and generally due on or about the ninth or nineteenth day of each month.

Forbes List members use a common set of code words and call-and-response phrases, or "lingo," which they refer to as an "insurance policy" or "knowledge." Forbes List members use this "lingo" with strangers who claim to be members of Forbes List to identify themselves as authentic and current members of the gang.

Martinez is a leader of the Forbes List—indeed, he is one of the "Dons." As explained in more detail below, Martinez used his position in charge of the Forbes List to coordinate and lead the gang's activities, including drug trafficking.

## III.    The Drug Trafficking Organization

Between in or about 2022 and in or about April 2025, members of the Forbes List participated in a Mexico-based drug trafficking organization ("DTO") run by co-defendant Carlos

Molina Rodriguez. In general, at the direction of the DTO, members of the Forbes List—including Martinez and some of his co-defendants—recruited drivers to traffic narcotics from Mexico to the United States. Typically, these drivers would have some connection to the Forbes List but no criminal record. The drivers would then make their way to California where they would cross into Mexico and receive a vehicle loaded with narcotics and/or narcotics proceeds to drive back across the United States-Mexico border. The drivers then transported the narcotics/narcotics proceeds-laden vehicle into the United States and across the country, staying in regular contact with their Forbes List recruiter.

For example, in February 2024, Martinez repeatedly directed co-defendant Kalif Cox to "find drivers" for the DTO. Cox then recruited an individual ("Individual-2") to be a driver for the DTO. Individual-2, like other drivers for the DTO, then flew to San Diego, California, on an itinerary purchased for him by co-defendant Samuel Blain. Individual-2 then crossed the border into Mexico and then reentered the United States driving a Chrysler Town & Country minivan. At the direction of co-defendant Carlos Molina Rodiguez, Individual-2 then went to several locations in California, and then drove east across the United States directly to Middletown, New York. Individual-2 drove to the vicinity of the defendant's apartment in Middletown, New York. Later that day, Martinez saved to his iCloud account a video depicting numerous wrapped packages of apparent narcotics inside his apartment.

Thus far, the Government's investigation has resulted in the seizure of approximately 16.5 kilograms of pure crystalline methamphetamine hydrochloride, also known as "crystal meth," and approximately 18 kilograms of methamphetamine trafficked across the border in this manner.

\*    \*    \*

The evidence in this case is overwhelming. Through the course of this investigation, law enforcement obtained search warrants for, among other things, Martinez's iCloud account and phone along with more than 20 phones and more than 50 social media or iCloud accounts used by Martinez's co-defendants and/or co-conspirators. Reviews of those cellphone, iCloud, and social media extractions has revealed the following, among other things: multiple chats involving members of the Forbes List and/or the DTO regarding the recruitment, travel, coordination, or payment of drivers; photos and videos of Forbes List and/or DTO members, multiple firearms, ammunition, large quantities of U.S. currency, and narcotics; photos and videos of the distinct packaging that the DTO used to wrap its narcotics; screenshots of messages sent amongst members of Forbes List and/or DTO members; Forbes List literature, lingo, oath, and laws; and photos of what appear to be drug ledgers. This electronic evidence is corroborated by, among other things, social media posts, post-arrest interviews, seized narcotics, financial records, flight records, license plate reader information, border crossing information; law enforcement surveillance; and vehicle registration information.

**IV.    Applicable Law**

The Government is entitled to a detention hearing pursuant to 18 U.S.C. § 3142(f)(1)(A), (B), and (C), because the defendant is charged with (A) a crime of violence within the meaning of § 3142(f) (Count Fourteen); (B) offenses for which the maximum sentence is life (Counts One,

Two, Three, and Four); and (C) drug trafficking offenses for which the maximum term of imprisonment is 10 years or more (Counts One, Two, and Three).

In this case the Court is required to presume that "no condition or combination of conditions will reasonably assure the appearance of the person and the safety of the community." 18 U.S.C. § 3142(e)(3)(A). The "defendant bears a limited burden of production—not a burden of persuasion—to rebut [that] presumption." *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). Even if the defendant can rebut the presumption, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered," *id.*, along with the factors set out in § 3142(g).

The Court must order detention when "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The Government must show "by clear and convincing evidence that the defendant presents a danger to the community and by the lesser standard of a preponderance of the evidence that the defendant presents a risk of flight." *United States v. English*, 629 F.3d 311, 319 (2d Cir. 2011) (quotation marks omitted).

The Government may meet its burden "by proffer alone." *United States v. LaFontaine*, 210 F.3d 125, 131 (2d Cir. 2000) (quotation marks omitted). "[B]ail hearings are typically informal affairs, not substitutes for trial or discovery," and so "courts often base detention decisions on hearsay evidence." *United States v. Abuhamra*, 389 F.3d 309, 321 n.7 (2d Cir. 2004) (quotation marks omitted).

## V.     Discussion

The Government requests that the Court order Martinez detained pending trial. Martinez is a leader of a sophisticated drug distribution and importation conspiracy and a violent street gang, for which he now faces extremely serious charges. He previously was convicted of federal narcotics distribution. And, following his arrest in this very case, and after consenting to detention, he attempted to sneak razor blades and marijuana into jail. He is a danger to the community and a risk of flight, and all the § 3142(g) factors weigh in favor of detention.

### A.     Nature and Circumstances of the Offenses

The nature and circumstances of Martinez's crimes are extremely serious and establish the danger Martinez poses to the community. Detention is justified on this basis alone.

#### 1.     Racketeering Conspiracy

Martinez ran the Forbes List as one of two "Dons." The racketeering activities that the Forbes List engaged in—from robberies, fraud, firearms trafficking, murder, and conspiracy to import and traffic narcotics, all constitute dangers to the community, and they were led by Martinez. Indeed, Martinez was listed at the top of the hierarchy of the Forbes List set, which was often exchanged in text messages among Forbes List members. For example, on July 5, 2024, Martinez sent co-defendant Kalif Cox a text message describing certain history of the Makk Ballas

and Forbes List set, in which the "Founder" of the Forbes List is "B-WAY"—meaning, Carlos Martinez, a/k/a "Bway." A portion of this text message is depicted below:

```
MAK-BALLA FAMILY "MBF"
MAK B-DAY:JULY 7,2003
FOUNDER:LARRY-O "L.O."
CO-FOUNDER:ELI
BANNER:MBBF "MAK.BALLA.BLOOD.FAMILY."
MAK AKA'S:EWOK,WOK OR Ewii

SALUTE'S & RESPONCES: MBF-TILL DA DEATH
MB-TILL DA DEATH
T.MONEY BAGS-REAL RITE BALLA'S
T.MONEY-REAL RITE BALLA'S
GET MONEY-TAKE MONEY
DA FAST WAY-DA SKI MASK WAY
IMMAKULATE WAYS-MAK TILL DA GRAVE
T.MONEY RAISED ME-BLING BLOW CRAZY
GET IT COUNT IT KEEP IT-HEAVY ON DA WRIST
MONEY BITCHES & FAME-THAT'S ALL I Know

Forbes' history &conduct
BANNER: MBBF "MAK.BALLA.BLOOD.FAMILY."
FOUNDER:B-WAY
Co-founder Aeasy,
FORBES B-DAY:JULY 19,2020
BANK NUMBER UNDER MBBF:6201
WHIP:MERCEDES-MAYBACH S580
The round table has the final sayso for the Forbes!!! Any decision wil be made on a vote
system!!!Majority vote wins!!!
The Forbes started in July 19th 2020!!!!
In 2013 a bunch of real rights were all in the Valhalla together with the old man putting on
for mb ,keeping shit immaculate!!!! The vision of the Forbes was always talked about!!! Fast
forward in 2019 mb became an independent national n labels started !!!! In July 19th 2020
all real rights link up n locked in n made the Forbes list!! The Forbes list supposed to be a
bunch of street niggas who got rich n made it to the top of the list!!!!!!
The Forbes is a brotherhood that is based on Family and Loyalty First, Respect Second, and
Money Third. The Forbes Move as an organization, Not a Gang. So, if You on Gang Time
Respectfully This ain't for you. We get money n drill when we have too plain n simple!!!!
Communication is a must in this family so check in with ur area…All Forbes must look
clean n presentable at all times!!never stank,dirty,or dusty.All Forbes must get money
wether is hustle or work legit !! All Forbes must n bring value to the family !!The kitty is
mandatory every month!!! if you miss the kitty you broke period!!! Never put anything over
your Forbey, always side with your Forbey whether right or wrong..we can talk things out
later!!!!!!!All Forbes must know their position at all times n spread the brand!!! We protect
our brand no matter what!!!!! Always think the best for the family….Nothing comes in

between The Forbes!!!!!!!!!!! Our label is the true definition of the Maybach(MB)
Everything Forbey!!

FORBEY RULES
1. MUST GET MONEY Working or Hustling
2. All Forbes must bring value to the family
3.NO snitching,rape,faggot shit
4.NO BACK BITING
5. Forbey Business is Forbey Business*enforce*
6.Treat Your Forbey Family as Your Own family
7.No Pushing Up on Your Forbey's Wife or BM 8.Dont Miss Pot(Kitty) You Will Be Scratched
off list,The Pot kitty is for the benefit of the family So it won't be taken lightly.
9.Always do best for the Family
10.Check in, with the C.O.C, RESPECT THE C.O.C At all times, AnyDisrespect towards that
will be dealt with accordingly!!!
11.NO Forbey on-Forbey beef there is zero tolerance
12.Dont post anything on social media that can incriminate the family!!!!
13. There is NO SUCH THING AS A BROKE Forbey this will be *enforced at all times*
```

Martinez continued to send Forbes List and Makk Ballas materials, including lingo and lineups. Another text from later in the day on July 5, 2024 depicted the hierarchy of the Forbes List set:

```
The list
 The town
Dons-,BwayRikko,Aeasy (Feds)

Co-Dons-,Just,Bucks
Young Don-,Lg
-high-Leo,Kass
-Low- Drillz, Scar
-5-,Emilio
-4- loso
-3-drizzy
-2-honcho
-1-Hof
-stains-Whispers(FL),Villain(L.i),Kurt Balla(NC) KD( Y.o) Kap/Tim(Harlem)
DONS 4 DA FEDS: A'EAZy!!!!
MONEY-UNIT-DON IN DA FEDS : HABIBI
CO-DON: K.D.-BALLA
M/U-UNIT DON IN DA FEDS :EASY-DA DON
```

Martinez ("Bway") is listed as one of the Dons. Co-defendant Justice Beard ("Just") is a Co-Don and Cox ("Lg") is a Young Don.

In addition, as part of its investigation, the Government has obtained numerous photographs collected in iCloud and social media accounts showing Martinez displaying Makk Ballas signs. Martinez also participated in a music video to promote the Forbes List and displayed gang signs in the video. His public Instagram account, moreover, indicated that he is "Top of the Forbes." And he regularly organized Forbes List meetings, directed subordinates to commit racketeering acts, including directing the recruitment of drivers for narcotics importation and distribution, and collected contributions to the gang's "kitty," a fund for incarcerated members. Martinez also regularly updated and distributed the Forbes List "lineup" to reorganize the leadership of the gang.

Significantly, Martinez and others also participated in acts of violence for the gang. A video contained in Martinez's iCloud account from in or about July 2022 depicts Martinez and other individuals robbing an individual—who was forced to the pavement of a sidewalk—of his jewelry and other belongings while a firearm was pointed at his back. In the video, Martinez appears to be directing the victim to end his relationship with a rival set of the Makk Ballas. And, in January 2024, in text messages with Martinez, Cox listed a September 2019 gunfight he instigated with rival gang members, which resulted in the murder of an innocent bystander hit by a stray bullet, as a shooting he committed on behalf of the Forbes List that he wanted credit for.

Martinez and other gang members also engaged in additional forms of racketeering activity. For example, there is substantial evidence throughout Martinez's electronic accounts of common bank fraud schemes. Under these schemes, a Forbes List member would deposit a fraudulent check into a bank account and then withdraw the money after the check cleared but before the bank would flag the check as fraudulent.

### 2. Possession of Ammunition

Martinez is also charged in Count Fourteen with possession of ammunition after a felony conviction. In May 2024, 15 boxes of Armscor rifle ammunition and over 24 loose rifle rounds were found in Martinez's residence. Also found in Martinez's residence were hard copies of a drug distribution ledger and a Makk Balla organization chart. A picture of the ammunition is below.



### 3. Narcotics Trafficking and Importation

Martinez is charged in Counts One, Two, and Three with running a large-scale narcotics conspiracy that imported narcotics from Mexico and transported those narcotics to New York, among other places, where they were distributed. Martinez was a leader in this conspiracy and profited substantially from its success. As described in part above, Martinez actively directed subordinate members of the Forbes List to recruit drivers transport those drugs from Mexico by driving them over the border using a fleet of specially-modified courier vans, and then drive them across the country to New York, among other places.

At least one of these courier vans drove directly to Martinez's residence in Middletown, New York. In February 2024, the same day that a courier van arrived at Martinez's residence after crossing over the border with Mexico into California just a few days earlier, Martinez uploaded a video to his iCloud account of multiple packages of apparent narcotics. Two screenshots from that video are below.

 

The packaging used to wrap these bricks is seen in other narcotics videos that the Government has obtained. And, in February 2025, the same packaging was used to wrap packages of methamphetamine that were seized during a search of a courier van attempting to cross the border into California.

The above is only a partial description of Martinez's commission of the crimes charged in the S2 Indictment. The defendant led and coordinated gang-related crimes involving acts of violence, fraud, firearms, and narcotics, along with the importation and distribution of numerous kilograms of narcotics, some of which were filmed in the defendant's own residence. The nature and circumstances of these offenses strongly favors detention.

B.  **Weight of the Evidence**

The evidence against Martinez is overwhelming. It includes, among other things, dozens of extractions of iCloud accounts, cellphones, and other social media accounts from multiple members of the Forbes List and DTO, including from all of Martinez's co-defendants. Through these extractions, law enforcement officers have reviewed thousands of text and audio messages, photos, and videos sent between members of Forbes List, DTO, and others. These materials included discussions about the Forbes List, discussions with recruited drivers, discussions regarding how to pay drivers, photos of drug ledgers, and photos and videos of narcotics and guns. As described above, the electronic evidence in this case is corroborated by, among other things, cellphone location data, license plate reader information, bank records, travel records, border crossing records, witness interviews, post-arrest interviews, law enforcement surveillance, and seized narcotics (which includes approximately 16.5 kilograms of crystal meth and approximately 18 kilograms of methamphetamine).

### C. Martinez's History and Characteristics

Martinez's history and characteristics also weigh heavily in favor of detention. He has two prior criminal convictions, demonstrating a pattern of recidivism that requires detention. And, critically, he attempted to smuggle razor blades and marijuana—hidden inside his rectum—into jail after he self-surrendered and consented to detention.

#### 1. Criminal History

As to Martinez's criminal history, on April 10, 2013, Martinez pleaded guilty in Orange County Court to attempted criminal possession of a weapon in the second degree in violation of New York Penal Law § 265.03(03), a Class C felony, and was sentenced to two years of imprisonment and three years of post-release supervision.

On January 16, 2015, Martinez pleaded guilty in the United States District Court for the Southern District of New York to conspiracy to distribute and possess with intent to distribute heroin in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B)[2], and was sentenced by Judge Seibel to 57 months of imprisonment.[3] Martinez was also sentenced to four years of supervised release, which ended in 2023.

As described above, despite being on supervised release during part of the timeframe of the crimes charged in this case, Martinez did not rehabilitate. Instead, he led the Forbes List and engaged in narcotics importation and distribution, including in 2022 and 2023.

#### 2. Conduct at Westchester County Jail

Further, Martinez's dangerous and egregious conduct in this proceeding weighs strongly in favor of detention. Although Martinez self-surrendered and consented to detention at his initial appearance before Your Honor, Martinez was also attempting at the same time to smuggle dangerous weapons—three ceramic razor blades—and marijuana into jail.

On April 8, 2025, following his presentment before Your Honor, Martinez was transported to Westchester County Jail. During the jail intake process, Martinez was offered amnesty in the jail's administrative disciplinary processes if he disclosed any contraband he possessed. Martinez disclosed that he possessed contraband and was escorted to a search stall where he underwent a strip search and was body scanned. The scanner detected an anomaly, and Martinez then voluntarily turned over two packages that he had attempted to secret into jail.

Each package consisted of multiple layers of latex glove fingers tied at one end. One package contained a plastic bag of marijuana, and the other package contained three ceramic razor

---

[2] One of Martinez's co-defendants in that case was Justice Beard, one of his co-defendants in this case. Beard pleaded guilty and was sentenced by Judge Seibel to 72 months of imprisonment.

[3] This sentence reflected an 80-month sentence adjusted downward by 23 months under U.S.S.G. § 5G1.3(b), to reflect a concurrent sentence with a sentence imposed in state court.

blades, which were wrapped in black electrical tape and surrounded by marijuana rolling papers. Photographs of these items are below.






      This is outrageous conduct. It was an act of defiance that likely was only interdicted by Martinez's discovery that body scanners—as opposed to metal detectors—are used in the intake process at Westchester County Jail. Although Martinez did disclose that he possessed contraband, that he even attempted to smuggle these items into jail at all, and went through the effort of carefully packaging them and stuffing them into his rectum, shows that he does not believe the rules apply to him, and that he is not going to abide by the rules of incarceration, much less the conditions of supervision. Ceramic razor blades would not be detected by a metal detector. That Martinez, after surrendering and consenting to detention, then went to the jail attempting to infiltrate with razor blades and marijuana hidden in his body is egregious misconduct. It makes clear that he will not respect or abide by rules of supervision and will put significant effort into defeating them.

### D.    Risk of Flight

Martinez is also a risk of flight.  He faces a mandatory minimum sentence of 20 years of imprisonment on Count Three (which exceeds the mandatory minimum sentences on Counts One and Two, which can be imposed concurrently), and a maximum potential sentence of life imprisonment.  Much of the evidence against Martinez is corroborated by his own words and actions, as preserved in his iCloud, phone, and social media accounts.  This evidence is incontrovertible and poses a powerful incentive to flee.  *See United States v. Williams*, 654 F. App'x 3, 4 (2d Cir. 2016) (summary order) (affirming district court order of detention where the district court found, among other things, "the strength of the evidence against [the defendant] coupled with the significant sentence [the defendant] potentially faced," and "extensive criminal history, parole violations, and engagement in criminal activity while under court-ordered supervision," created a risk of flight); *United States v. Green*, No. 20 CR 357 (VM), 2020 WL 5814191, at *1 (S.D.N.Y. Sept. 30, 2020) ("The Government's evidence is strong, and, if convicted, Green faces a significant sentence, which gives him an incentive to flee.").  In addition, Martinez has organized and coordinated a sophisticated narcotics distribution and importation conspiracy, and likely could be assisted in his flight by contacts abroad.

### Conclusion

The evidence proffered above is not all of the Government's evidence against Martinez, as a bail hearing is not a "mini-trial" or a "discovery tool for the defendant." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986).  But, the evidence described above makes clear that Martinez cannot overcome the presumption in favor of detention.  There are no conditions or combination of conditions that can reasonably assure Martinez's appearance or the safety of the community, and Martinez should be detained pending trial.

Respectfully submitted,

JAY CLAYTON
United States Attorney

by:    /s/
      Ryan W. Allison
      Justin L. Brooke
      Jennifer N. Ong
      Margaret N. Vasu
      Assistant United States Attorneys
      (212) 637-2474 (Allison) / - 2224 (Ong)
      (914) 993-1918 (Brooke) / - 1930 (Vasu)

CC:    Michael Braverman, Esq. (via ECF and email)
       Ray Gazer, Esq. (via ECF and email)